IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAFEWAY, INC., | No. C 05-3182 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket No. 22] |
| INTERNAL REVENUE SERVICE, | |
| Defendant. | |
| _____ / | |

This matter comes before the Court on Defendant's Motion for Summary Judgment.

## **BACKGROUND**

This is a civil action under the Freedom of Information Act (FOIA). Plaintiff seeks release of records it alleges the IRS is improperly withholding.

The facts of the underlying dispute are as follows: Dominick's Supermarkets, Inc. ("DSI") gave The Yucaipa Companies ("Yucaipa") a common stock warrant as compensation for services rendered. Schmidt Decl. ¶ 3. Plaintiff then acquired all of the outstanding common stock of DSI. As part of that transaction, Plaintiff acquired the warrant. *Id*. at ¶¶ 3, 4. Plaintiff claimed a deduction for the warrant on its 1998 federal income tax return. *Id*. at ¶ 5. Following a routine audit, the IRS advised Plaintiff that it would disallow the deduction. *Id*. at ¶ 9. Plaintiff initiated an appeal of that decision within the agency. The appeal is awaiting the completion of a related audit of Yucaipa. *Id*. at ¶¶ 16-19.

On September 24, 2003, Plaintiff sent a letter to the IRS requesting records pertaining to the transaction with Yucaipa. Wilson Decl. ¶ 2. The IRS responded on January 14, 2004, and provided 182 pages of responsive documents, 13 of which were partially redacted. *Id.* On January 24, 2005, Plaintiff made a second request for documents. *Id*. at 3. On June 9, 2005, the IRS responded by providing 123 pages of responsive material, 60 of which were partially redacted. *Id*. The IRS withheld 143 pages of material. *Id*. Since then, on May 30, 3006, the IRS authorized release of an additional 29

pages of documents responsive to Plaintiff's FOIA requests. Vozne Decl. ¶ 2. Thus, of 449 pages of responsive documents located by the IRS, 239 pages have been released in full, 74 pages have been released in part, and 136 pages have been withheld. Tate Decl. ¶ 3.

Plaintiff administratively appealed the withholding of documents on January 23, 2004 and June 24, 2005, respectively. Defendant did not respond. Sax Decl. ¶¶ 4, 7. Plaintiff filed a Complaint on August 5, 2005, alleging that the documents had been improperly withheld. In the instant Motion for Summary Judgment, Defendant argues that the documents were properly withheld pursuant to FOIA exemptions.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56, a court may properly grant a motion for summary judgment if the pleadings and materials demonstrate that there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may be granted in favor of a defendant on an ultimate issue of fact where the defendant carries its burden of "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989).

To withstand a motion for summary judgment, the non-movant must show that there are genuine factual issues which can only be resolved by the trier of fact. *Anderson*, 477 U.S. at 250. The nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The court's function, however, is not to make credibility determinations. *Anderson*, 477 U.S. at 249. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.*, 809 F.2d at 631.

## **ANALYSIS**

FOIA mandates that agencies make a broad range of information available for public inspection. 5 U.S.C. § 552(a). An agency may withhold a requested document only if it falls within one of nine

categories of documents exempt from disclosure.  5 U.S.C. § 552(b).  These exemptions are to be narrowly construed.  *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995).

In FOIA cases, "only the party opposing disclosure will have access to all the facts." *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991).  "The party requesting disclosure must rely upon his adversary's representations as to the material withheld, and the court is deprived of the benefit of informed advocacy to draw its attention to the weaknesses in the withholding agency's arguments." *Id*.  As such, the burden of proof is on the agency seeking to avoid disclosure. *Ollestad v. Kelley*, 573 F.2d 1109, 1110 (9th Cir. 1978).  Further, FOIA requires that any "reasonably segregable portion of a record" shall be provided to the person requesting the record after deleting portions which are exempt from disclosure.  5 U.S.C. § 552(b).

Courts may require the agency to supply the opposing party and the court with a "*Vaughn* index." *Wiener*, 943 F.2d at 977.[1]  The *Vaughn* index "identif[ies] each document withheld, the statutory exemption claimed," and gives "a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption."  *Id*.  Whether the government's affidavits constitute an adequate *Vaughn* index is a question of law reviewed de novo. *Id*. at 978.  The government "may not rely on conclusory and generalized allegations of exemptions." *Kamman*, 56 F.3d at 48 (citations omitted).  Instead, the affidavits "must contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption." *Id*. (citations omitted).

The IRS submitted three affidavits to meet its burden of identifying the documents withheld and explaining why they should be withheld.[2]  The IRS claims that the documents in this case were withheld pursuant to Exemptions 3, 5, 6, and 7.  Some documents were withheld pursuant to multiple exemptions; thus, the Court will discuss each category of documents in turn.

As an initial matter, though, the Court must resolve whether Defendant has conducted an

---

[1] This concept is derived from *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

[2] None of the affidavits is labeled as a *Vaughn* index, and it is unclear whether the government intends them to be taken as such.

3

1 adequate search for records responsive to Plaintiff's FOIA request. *See Zemansky v. EPA*, 767 F.2d 569,
2 571 (9th Cir. 1985) ("the issue to be resolved is not whether there might exist any other documents
3 possibly responsive to the request, but rather whether the *search* for those documents was *adequate*")
4 (emphasis in original). Plaintiff asserts that the search was inadequate because Defendant admits that
5 there may be responsive documents in Yucaipa's audit file, but has not searched that file. Opposition
6 at 6. This is a bit misleading; Defendant does not actually admit that there are documents responsive
7 to Plaintiff's FOIA requests in Yucaipa's audit file. Instead, Defendant states that, "to the extent that
8 an audit file of The Yucaipa Companies may exist, any such file may also contain records responsive
9 to plaintiff's requests." Wilson Decl. ¶ 4. Defendant asserts that in order to access Yucaipa's tax return
10 information, Plaintiff must obtain consent from Yucaipa. *See* 26 U.S.C. § 6103(c) (allowing disclosure
11 of return information upon consent of the taxpayer). Absent such consent, the IRS is prohibited from
12 disclosing the contents of Yucaipa's audit file, or even acknowledging that such a file exists. *See* 26
13 U.S.C. § 6103(a) (prohibiting disclosure of return information). *See also Long v. IRS*, 891 F.2d 222 (9th
14 Cir. 1989) (holding that return information is protected from disclosure under FOIA Exemption 3).

15 Whether Yucaipa's audit file is protected from disclosure is one of the central issues in this case,
16 and will be addressed more fully in the Court's discussion of Exemption 3. Based on that analysis, the
17 Court rejects Plaintiff's argument that Defendant's search was inadequate because it did not include a
18 search of Yucaipa's audit file. Plaintiff does not state any other basis for finding the search to be
19 inadequate, and Defendant declares that it obtained and reviewed all records in Plaintiff's audit file that
20 were responsive to the requests. Wilson Decl. at ¶ 4. Although the IRS' argument regarding the
21 adequacy of its search is brief and conclusory, mainly consisting of recitation of the relevant legal
22 standards without application to the facts, the Court finds that Defendant conducted an adequate search.

23 **A.  Documents that, if disclosed, would impair ongoing law enforcement efforts by the IRS –**
24 **Exemptions 3 and 7(A)**

25 Exemption 3 protects matters that are "specifically exempted from disclosure by statute . . .
26 provided that such statute (A) requires that the matters be withheld from the public in such a manner
27 as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to
28 particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Exemption 7(A) protects "records or

4

information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings."

The IRS claims that disclosure of pages 1-10, 12-28, 30-35, 37-58, 60-65, 68, 70-75, 77-88, and 91-217 would "reveal the scope and direction of the audit of plaintiff, and would reveal the IRS analysis of the strengths and weaknesses of its position with respect to issues raised in the audit, thereby giving plaintiff earlier and greater access to the IRS position on issues still in dispute." Tate Decl. ¶ 5. The IRS claims that disclosure of these documents would enable Plaintiff to create or destroy evidence, and craft explanations or defenses, impairing the ability of the IRS to determine the correct application of the tax laws to Plaintiff. *Id*. Thus, Defendant argues, the documents should be withheld pursuant to Exemption 7(A). Further, Defendant asserts that disclosure of pages 6-10, 12, 13, 35, 37-58, 60, 61, 64, 68, 70-75, and 77-88 would seriously impair Federal tax administration, for the same reasons, and thus the documents should be withheld pursuant to Exemptions 7(A) and 3. *Id*. The statutory basis for the Exemption 3 claim here is 26 U.S.C. § 6103(e)(7), which prohibits disclosure of return information if it would seriously impair Federal tax administration.

To decide whether Exemption 7 applies, the Court must first determine whether the agency exercises a law enforcement function. *Church of Scientology*, 995 F.2d at 919. The Ninth Circuit has held that the IRS exercises a law enforcement function, noting that "civil as well as criminal law enforcement activities are within the purview of the exemption." *Id*. (quoting *Ctr. for Nat'l Policy Rev. on Race & Urban Issues v. Weinberger*, 502 F.2d 370, 373 (D.C. Cir. 1974)). Next, the Court must determine whether the records and information were compiled for law enforcement purposes. *Id*. at 920. The agency need only establish a "rational nexus" between its enforcement purpose and the documents for which the exemption is claimed. *Lewis v. IRS*, 823 F.2d 375, 380 (9th Cir. 1987).[3] If the asserted law enforcement purpose is "pretextual or wholly unbelievable," then the Court need not accept it, but in general, the Court should accord a high degree of deference to the agency's explanation. *Rosenfeld*

---

[3]Plaintiff argues that the IRS is not entitled to the deferential "nexus" standard, because it applies exclusively to criminal law enforcement agencies such as the FBI. However, in *Lewis*, *supra*, the Ninth Circuit applied the nexus test to the IRS, and that case involved both civil and criminal enforcement activities.

*v. Dep't. of Justice*, 57 F.3d 803, 808 (9th Cir. 1995). The IRS asserts that audit files are compiled for law enforcement purposes, because they contain records and information "compiled in the course of the investigation into the taxpayer's compliance with the internal revenue laws." Tate Decl. ¶ 4. This is sufficient to meet the rational nexus test. *See Lewis*, 823 F.2d at 380.

The remaining question is whether disclosure of the documents could reasonably be expected to interfere with enforcement proceedings. Defendant argues that "interference" has been defined broadly, and includes revealing the identities of potential witnesses; the nature, scope, and limits of an investigation; the evidence obtained; and the government's strategies and theories. Motion at 12.

Defendant relies on *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 236 (1978), in which the Supreme Court held that the courts may make "generic determinations of likely interference" – in other words, courts may determine that, "with respect to particular kinds of investigatory proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.'" *Robbins* held that disclosure of statements of witnesses whom the NLRB planned to call at an unfair labor practice hearing would, categorically, interfere with the NLRB's enforcement proceedings. The decision was largely premised on the unique nature of NLRB proceedings and the danger of witness tampering or intimidation.

Plaintiff argues that *Robbins*, and the other cases relied upon by Defendant, are distinguishable because they involved criminal investigations related to, for example, arms smuggling and political assassinations, or there was evidence of harassment by the party requesting disclosure. Opposition at 10. Plaintiff asserts that these cases "delineate the far extreme of exemption 7(A) fact situations," and "there has been no impropriety in Plaintiff's interactions with Defendant that might explain or justify Defendant's apprehensions." *Id*.[4] It is true that some cases relied upon by Defendant involve fact situations which are quite different from this case. *See, e.g.*, *Spannaus v. Dept. of Justice*, 813 F.2d 1285 (4th Cir. 1987) (holding that records related to the assassination of an Iranian activist and the

---

[4]Plaintiff also argues that in the civil audit context Defendant is required by statute to disclose to taxpayers "the very matters it now claims would interfere with law enforcement proceedings." Opposition at 10. For instance, 26 U.S.C. § 7602(c) requires the IRS to provide taxpayers with reasonable advance notice of third-party contacts made in an audit. This argument will be addressed further below in the discussion of Exemption 3.

6

1 indictment of other Iranians for illegal arms sales were protected from disclosure under Exemption
2 7(A)). However, there is authority for the proposition that the IRS may withhold documents related to
3 ongoing civil investigations. In *Barney v. IRS*, 618 F.2d 1268, 1273 (8th Cir. 1980), the court made a
4 "generic determination" that disclosure of records such as "witness statements, documentary evidence,
5 agent's work papers and internal agency memoranda" would interfere with civil or criminal tax
6 enforcement proceedings by prematurely revealing the government's case. In *Lewis*, the Ninth Circuit
7 agreed with *Barney*, holding that "under exemption 7(A) the government is not required to make a
8 specific factual showing with respect to each withheld document that disclosure would actually interfere
9 with a particular enforcement proceeding." 823 F.2d at 380. Rather, the IRS "need only make a general
10 showing that disclosure of its investigatory records would interfere with its enforcement proceedings."
11 *Id*.

12 Plaintiff's attempt to distinguish *Lewis* and *Barney* is unavailing. In those cases, as in this one,
13 the IRS made no specific factual showing that the party seeking disclosure had acted inappropriately.
14 The government's affidavit in *Lewis* bore strong resemblance to the government's affidavit here: it
15 expressed a general concern that revealing the scope of the IRS' case could frustrate its ability to pursue
16 it.[5] Thus, the Court rejects Plaintiff's arguments regarding Exemption 7(A). Although the IRS has
17 made only a very general showing that disclosure of the documents is likely to interfere with
18 enforcement proceedings, under the case law, no more is necessary. To the extent that the IRS is
19 withholding documents pursuant to Exemption 7(A), the Motion for Summary Judgment is granted.
20 Accordingly, it is unnecessary to address the Exemption 3 argument with respect to those documents.

21 **B.    Documents that would identify individual witnesses – Exemptions 3, 7(A) and 7(C)**

22 Exemption 7(C) protects documents compiled for law enforcement purposes to the extent that
23 their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal
24 privacy." 5 U.S.C. § 552(b)(7). A document is properly withheld under Exemption 7(C) if "the public
25 interest in disclosure is outweighed by the individual privacy interests that would suffer from

26

---

27 [5]Plaintiff asserts that the IRS' audit is complete. Defendant states that the audit is "open and
28 ongoing." Schwarcz Decl. ¶ 2. The IRS is in a better position to know whether the audit is closed, and the fact that the appeals process is still pending belies Plaintiff's position.

7

disclosure." *Wiener*, 943 F.2d at 984 (citing *Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989)).

The IRS claims that pages 6, 52-57, 60, 61, and 91-217 contain information that would identify witnesses who assisted the IRS in its investigation. Disclosure of this information "would enable plaintiff to target such individual(s) for possible harassment or intimidation, and enable plaintiff to tamper with witness testimony, while providing little insight into the operations of the IRS." Tate Decl. ¶ 6. Further, disclosure of these witnesses would seriously impair Federal tax administration "by discouraging individuals from assisting the IRS" in tax investigations. *Id*. Finally, the IRS asserts, disclosure of these witnesses would also be an unwarranted invasion into their personal privacy. *Id*. Thus, the IRS asserts, these documents should be withheld pursuant to Exemptions 7(A), 7(C), and 3 in conjunction with 26 U.S.C. § 6103(e)(7) (which, again, prohibits disclosure of return information if it would seriously impair Federal tax administration).

Plaintiff argues that the privacy interests of any individuals identified in the withheld documents would not be impacted by disclosure. Plaintiff reasons that these individuals are "sufficiently involved in the transactions at issue," and thus Defendant is statutorily required to identify them upon request, citing 26 U.S.C. §§ 7602(c) and 7609(b). Those statutes, respectively, provide that the IRS may not contact third parties "with respect to determination or collection of the tax liability" of a taxpayer without giving notice to the taxpayer; and provide procedures for third-party summonses. In essence, Plaintiff argues that it already knows the identities of most participants in the transaction in question, and that the IRS is obligated to disclose them in any event. Thus, the IRS should not be allowed to invoke Exemption 7(C).

The IRS responds that "[b]y Safeway's own admission, Safeway does not necessarily know the identities of all witnesses and there are situations in which the IRS need not identify witnesses." Reply at 4. Specifically, 26 U.S.C. § 7602(c) sets out exceptions to the general rule that the IRS must give notice to the taxpayer of third-party contacts, such as when "such notice would jeopardize collection of any tax." However, the IRS does not go further and explain whether and why the third-parties at issue here need not be disclosed to Plaintiff. The IRS provides very minimal information to support its assertion that releasing the withheld documents would constitute an unwarranted invasion of personal

8

privacy, and its assertion that revealing the identities of witnesses may result in harassment or intimidation seems speculative.

Neither party makes a very strong argument regarding Exemption 7(C). However, Plaintiff bears the burden of demonstrating the public interest in the information; Plaintiff must show that "the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that interest. Otherwise, the invasion of privacy is unwarranted." *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). Plaintiff has not made the requisite showing that a significant public interest is at stake. Thus, the Motion for Summary Judgment is granted with respect to documents withheld pursuant to Exemption 7(C). It is unnecessary to address whether the same documents should also be withheld pursuant to Exemptions 3 and 7(A).

**C.   Exemption 3**

The IRS claims that pages 1-6, 12, 14-34, 37-40, 44, 46-49, 60, 62, 63, 65, 70-75, 77, 81, 82, and 87-217 contain information originally obtained or created by the IRS in the course of determining the tax liability of taxpayers other than Plaintiff. Tate Decl. ¶ 9.[6] This material is exempt from disclosure under Exemption 3, the IRS claims, because under 26 U.S.C. § 6103(a), the IRS may not disclose taxpayer returns and return information to the public.[7]

It is established that § 6103(a) is an appropriate statutory predicate for Exemption 3. *Wiener*, 943 F.2d at 982 n.16. *See also Long v. IRS*, 742 F.2d 1173, 1178 (9th Cir. 1984) ("Exemption 3 of the FOIA was designed to give effect to just such explicit nondisclosure statutes as section 6103."). However, Plaintiff argues, Defendant is authorized to disclose return information in this case pursuant

---

[6]The third-party taxpayer at issue is, evidently, Yucaipa.

[7]Return information is defined as "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense." 26 U.S.C. § 6103(b)(2).

9

1 to 29 U.S.C. § 6103(h)(4). This statute provides that return information may be disclosed in a "Federal
2 or State judicial or administrative proceeding pertaining to tax administration" if it "directly relates to
3 a transactional relationship between a person who is a party to the proceeding and the taxpayer which
4 directly affects the resolution of an issue in the proceeding." According to Plaintiff, the underlying audit
5 and administrative tax appeal are "proceedings" within the meaning of § 6103(h)(4). And, claims
6 Plaintiff, the return information contained in the withheld documents directly relates to a transactional
7 relationship between itself and Yucaipa which affects the resolution of its audit and appeal.

8 Defendant responds that § 6103(h)(4) does not permit disclosure of third-party tax return
9 information to Plaintiff, because the word "proceeding" in this context means the FOIA litigation, not
10 the underlying tax proceeding. Reply at 5. Further, Defendant points to *Chamberlain v. Kurtz*, 589 F.2d
11 827, 837-38 (5th Cir. 1979), in which the Fifth Circuit was presented with a similar argument and held
12 that subsection (h)(4) merely give the IRS permission to disclose return information to other federal law
13 enforcement officials for use as evidence. "Nothing in the legislative history of section 6103 suggests
14 that subsection (h)(4) was intended to govern disclosures of information to the taxpayer himself." *Id.*
15 *See also Cal-Am Corp. v. IRS*, 1980 WL 1551 at *7 (C.D. Cal. 1980) (citing *Chamberlain* with approval
16 and stating that "Congress did not enact the comprehensive scheme under Section 6103 for releasing
17 information to taxpayers with the intention that it have no further applicability once the taxpayer files
18 a FOIA suit"). The cases relied on by Plaintiff are actions brought by taxpayers against the IRS,
19 claiming that their confidential return information had been improperly disclosed. *See, e.g., McDonald*
20 *v. United States*, 102 F.3d 1009 (9th Cir. 1996). Plaintiff does not cite any cases directly supporting its
21 theory that the FOIA litigation is a "proceeding" within the meaning of 26 U.S.C. § 6103(h)(4).[8]

22 Thus, the Court agrees with the IRS' argument regarding the applicability of section 6103(h)(4)
23 to this litigation. The Ninth Circuit has held that "the withholding agency must ordinarily provide the

---

[8] Plaintiff points to an IRS internal manual, which states that third party tax information may be disclosed under certain circumstances pursuant to subsection (h)(4). Compendium of Tax Law Authorities Ex. A. However, this manual states that "proceedings" "generally includes any proceedings regarding proposed or actual actions against a person(s) that are enforceable under agency laws or regulations." *Id.* Thus, while the IRS arguably should disclose Yucaipa's tax information to Plaintiff in the underlying tax proceeding under subsection (h)(4), the statute does not apply to FOIA litigation.

1  FOIA requester with a description of the withheld information sufficient to enable the FOIA requester
2  to challenge the agency's understanding of the scope of section 6103 reflected in the decision to
3  withhold." *Wiener*, 943 F.2d at 982.  The IRS' affidavits do not offer any description of the withheld
4  information aside from the bare statement that "the documents and information reflect the investigation
5  into, and analysis of, the other taxpayer(s) financial situation as it pertains to tax liability and analysis
6  of the applicability to the other taxpayer(s) of provisions of the Internal Revenue Code." Tate Decl. ¶
7  9.  However, Plaintiff apparently concedes that the information withheld was indeed "return
8  information" within the meaning of § 6103. *See* Opposition at 19.  Accordingly, Defendant's Motion
9  for Summary Judgment is granted as to pages withheld pursuant to Exemption 3 in conjunction with §
10 6103(a).

**D.   Exemption 5**

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  Exemption 5 encompasses the "deliberative process privilege" and the attorney client privilege. *Maricopa Audubon Soc. v. United States Forest Service*, 108 F.3d 1089, 1092 (9th Cir. 1997).

The "deliberative process privilege" shields from disclosure documents that are both "predecisional" and "deliberative." *National Wildlife Federation v. United States Forest Service*, 861 F.2d 1114, 1117 (9th Cir. 1988). "A predecisional document is one prepared in order to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Assembly of the State of California v. United Stated Dept. of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) (citations omitted).  A document is deliberative if its "disclosure would expose the agency's decisionmaking process in such a way as to discourage candid discussion within the agency." *Id*.  Further, "even if the content of a document is factual, if disclosure of the document would expose 'the decision-making process itself' to public scrutiny by revealing the agency's 'evaluation and analysis of multitudinous facts,' the document would nonetheless be exempt from disclosure." *National Wildlife,* 861 F.2d at 1118.

11

1  In its affidavits, the IRS states that it is withholding information on pages 1-9, 12-35, 37, 39-58, 60-62, 64, 68, 70-75, 77-88, and 91-217 pursuant to the deliberative process privilege. Tate Decl. ¶ 7. According to the IRS, disclosure of these documents would reveal pre-decisional thoughts and analysis of IRS employees. The documents consist of notes and email messages which reflect "deliberations by IRS employees, including counsel employees, with respect to IRS efforts to properly assess and collect taxes owed by plaintiff. The information reflects deliberations regarding possible ways to address issues arising with respect to plaintiff's tax matters, but do not reflect a final decision as to which approach would be used." *Id*.

Plaintiff argues that the documents cannot be withheld under the deliberative process privilege, because they are related not to the adoption of agency policy, but rather to the execution of policies that have already been adopted. In other words, the IRS' decisionmaking about the extent of Plaintiff's tax liability is not the sort of deliberative process meant to be addressed by the privilege. In the alternative, Plaintiff argues that the IRS' proffered declarations are inadequate to allow the Court to evaluate whether the deliberative process privilege has been properly invoked.

The Court agrees with Plaintiff. It is clear that "straightforward explanations of agency regulations in specific factual situations" do not qualify for the deliberative process privilege. *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980). "Characterizing [] documents as 'predecisional' simply because they play into an ongoing audit process would be a serious warping of the meaning of the word." *Id*. *See also Maricopa Audubon Soc.*, 108 F.3d at 1094 (citing the *Coastal States* decision); *Assembly of the State of California*, 968 F.2d at 921 (same). The general description of the documents in Defendant's affidavits indicates that the withheld information is precisely that: intra-agency discussion of how to apply established policy and law to the particular facts of Plaintiff's audit. Absent a more thorough explanation of the contents of the documents by Defendant, the Court must assume that they do not contain subjective, personal thoughts of IRS employees that could expose them to ridicule or criticism. *See Coastal States*, 617 F.2d at 286 (emphasizing that the agency has the burden of establishing "what deliberative process is involved, and the role played by the documents in issue in the course of that process"). Thus, to the extent the IRS relies on the deliberative process privilege, its Motion for Summary Judgment is denied.

1   The IRS further states that it is withholding information on pages 6-8, 10, 35, 37, 42-58, 60, 70-75, and 86-88 pursuant to the attorney-client privilege. Tate Decl. ¶ 8. These pages contain communications between and among IRS employees and IRS attorneys, seeking and providing legal advice "with respect to issues arising in plaintiff's audit." *Id*.

Plaintiff argues that because "the IRS does not identify the date, source, recipient, subject matter or nature of the communications contained in the individual documents," its declarations are insufficient to qualify for the attorney client privilege under Exemption 5. Further, Plaintiff argues that the attorney client privilege is "likely waived as to all or part of the subject matter of the communications," because disclosures already made in response to its FOIA requests reveal "significant aspects of the legal advice sought and given during the audit." Opposition at 21.

Plaintiff is correct that the IRS' declarations contain what appears to be boilerplate language, and no detail whatsoever about the nature of the supposedly privileged communications. Such declarations are insufficient to meet the agency's burden. *See, e.g., Wiener*, 943 F.2d at 978; *Miller v. United States Dept. of Agriculture*, 13 F.3d 260, 263 (8th Cir. 1993). Further, memoranda from agency attorneys to auditors containing "neutral, objective analyses of agency regulations" have been held to fall outside the attorney-client privilege because they do not contain private information intended to assist the agency in protecting its interests. *Coastal States*, 617 F.2d at 863. Thus, Defendant's Motion for Summary Judgment is denied with respect to documents withheld pursuant to the attorney-client privilege.

**E.     Exemption 6**

Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The IRS claims that portions of four pages should be withheld pursuant to this exception. Plaintiff consents to summary judgment as to the four documents falling under Exemption 6. Opposition at 22. Thus, summary judgment is granted as to those documents.

**F.     In Camera Inspection**

The Court may conduct an *in camera* inspection of the documents in order to determine their exempt status. 5 U.S.C. § 552(a)(4)(B). Whether to conduct an *in camera* inspection is within the

13

Court's discretion, but it "is not a substitute for the government's burden of proof, and should not be resorted to lightly." *Lewis*, 823 F.2d 378 (quoting *Church of Scientology v. United States Dept. of the Army*, 611 F.2d 738, 742 (9th Cir. 1979)). *In camera* inspection is "proper to determine whether parts of a record could be released while keeping other parts secret." *United States Dept. of Justice v. Reporter's Comm. for Freedom of the Press*, 489 U.S. 749, 768 (1989). However, the Court "need not and should not make *in camera* inspections where the government has sustained its burden of proof on the claimed exemption by public testimony or affidavits." *Lewis*, 823 F.2d at 378. The Court may ask for more detailed affidavits from the government before resorting to *in camera* review. *Id.* at 379.

The Court denies Plaintiff's request for an in camera inspection. The government has sustained its burden of proof with respect to the documents as to which the Court has granted summary judgment. The documents as to which only Exemption 5 applies shall be disclosed, and the remaining documents may be withheld.

## **CONCLUSION**

Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

Dated: 10/24/06

SAUNDRA BROWN ARMSTRONG
United States District Judge